David H. BURLESON and Joan
A. Burleson Plaintiffs

v.

LIGGETT GROUP INC.,
et al., Defendants

No. CIV. A. 9:99–CV–233.

United States District Court,
E.D. Texas,
Lufkin Division.

May 5, 2000.

George Edmond Chandler, Chandler Law Offices, Lufkin, TX, W Mark Lanier, Lanier Parker & Sullivan, Houston, TX, Vaughan O'Neal Stewart, Lake Jackson, TX, W Douglas Matthews, Matthew &

Kennedy, Houston, TX, Charles S Siegel, Dallas, TX, for David H Burleson, Joan A Burleson, plaintiffs.

Ellen B Malow, James William Bartlett, Jr, Kasowitz Benson Torres & Friedman LLP, Houston, TX, Michael M Fay, Kasowitz Benson Torres & Friedman, New York, NY, for Liggett Group, Inc., defendant.

Phillip Bruce Dye, Paul Edward Stallings, Kethleen Ann Gallagher, Vinson & Elkins, Houston, TX, for Brown & Williamson Tobacco Corp., Batus Holdings, Inc., defendant.

William E Marple, Stephen Brian Yeager, Catherine L Bjorck, Jones Day Reavis & Pogue, Dallas, TX, for R.J. Reynolds Tobacco Co., defendant.

Stephen Edward Scheve, Steven R Selsberg, Alexander Christos Papandreou, Peter Michael Henk, Shook Hardy & Bacon, Houston, TX, for Philip Morris Companies, Inc., Philip Morris Inc., Philip Morris Products, Inc., Loews Corp., Lorollard, Inc., defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Certain Defendants' Motion for Judgment on the Pleadings is now before this court. [Dkt. # 29][1] Plaintiffs brought suit against various tobacco industry defendants for fraud and negligence in the manipulation of nicotine. Defendants moved for judgment on the pleadings arguing that plaintiffs' claims are barred by TEX. CIV. PRAC. & REM. CODE § 82.004 (Vernon 1997). Recently, the United States Court of Appeals for the Fifth Circuit considered the effect of section 82.004 in a suit brought by an individual smoker in *Sanchez v. Liggett & Myers, Inc., et al.,*

187 F.3d 486 (5th Cir.1999) (Parker J. dissenting), *reh'g en banc denied,* 196 F.3d 1259 (5th Cir.1999).[2] In *Sanchez,* plaintiffs sued for intentional fraud, misrepresentation, breach of implied warranty, conspiracy and violations of the Texas Deceptive Trade Practices Act. TEX. BUS. & COM. CODE § 17.41 *et seq.* (Vernon 1987). The court found all of plaintiffs' claims to be barred.

In the present case, plaintiffs vehemently argue that *Sanchez* was decided incorrectly, but concede that if applicable, their claims would be barred. Instead, plaintiffs argue Texas substantive law does not apply under Texas choice of law rules and alternatively, they argue that section 82.004 is unconstitutional under the Texas and United States Constitutions. A full discussion of *Sanchez* and its effect on tobacco suits is contained in the court's memorandum opinion entered on this same date in *Hughes v. The Tobacco Institute et al.,* No. 1:99CV163 (E.D.Tex. May, 2000). Some of plaintiffs' arguments are covered in that memorandum opinion, the rest are discussed here. For the reasons stated below and in this court's memorandum opinion in *Hughes,* the court finds that the plaintiffs' claims are barred by section 82.004.

## I. BACKGROUND

Plaintiffs are Texas residents and in their pleadings assert that a substantial part of the events and omissions giving rise to this suit occurred in Texas. Mr. Burleson started smoking as a minor and later became addicted. He now suffers from oral cancer. He brings this action alleging negligence, fraud, misrepresentation and products liability for design defect. His wife seeks recovery for loss of consortium.

---

1. This motion was originally filed by defendants Philip Morris Inc., Lorillard Tobacco Co., Lorillard, Inc., Brown & Williamson Tobacco Corp., individually and as successor by merger to The American Tobacco Company, and R.J. Reynolds Tobacco Co. This motion was later joined by Liggett Group Inc.

2. Plaintiffs in *Sanchez* did not file an application for writ of certiorari to the United States Supreme Court.

## II. STANDARD FOR JUDGMENT ON THE PLEADINGS

Federal Rule 12(c) provides that after the pleadings are closed, "any party may move for judgment on the pleadings." When deciding such a motion, the court must regard allegations of fact in the complaint as true. *See St. Paul Ins. v. AFIA Worldwide Ins.*, 937 F.2d 274, 279 (5th Cir.1991); *Cash v. Comm'r of Internal Revenue*, 580 F.2d 152, 154 (5th Cir.1978). The standard for a motion for Judgment on the Pleadings is roughly equivalent to that applied on a motion under Rule 12(b)(6) for failure to state a claim. See 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (1990).

 This court must apply state law as it currently exists, and may not change that law nor adopt and create innovative theories of recovery. *See Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir. 1992) (per curiam). In ascertaining the law of the forum state, a federal court is "bound to apply the law as interpreted by the state's highest court." *Texas Dep't of Hous. & Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 749 (5th Cir.1995). This court

is bound by the Fifth Circuit's interpretation of Texas law unless a subsequent state court decision or statutory amendment renders the Fifth Circuit's prior decision clearly wrong. *See Id.*, at 747.

## III. CHOICE OF LAW

Plaintiffs claim the Texas substantive law does not apply because the defendants' decision to manufacture and market tobacco products and to misrepresent and conceal their harmful effects occurred in other states, namely Virginia for Philip Morris, North Carolina for Lorillard and R.J. Reynolds and Kentucky for Brown & Williamson. Plaintiffs argue under the choice of law rules, the laws of these states should apply because they have the most significant relationship to the alleged tort. Since jurisdiction rests on diversity grounds, this court is obligated to apply Texas choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Mitchell v. Lone Star Ammunition Inc.*, 913 F.2d 242, 249 (5th Cir.1990).

 In *Gutierrez v. Collins*, the Texas Supreme Court adopted the "most significant relationship" test for the resolution of choice of law questions in tort cases, 583 S.W.2d 312, 318–19 (Tex.1979). The test is set out in the RESTATEMENT (SECOND) OF CONFLICTS OF LAW §§ 6 and 145 (1971).[3] In *Gutierrez*, the court

**3.** Section 6, stating the general principles, provides,

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Section 145 lists factual matters to be considered when applying the principles of section 6 to a tort case:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

abandoned the previous rule of lex loci delicti (application of the law in the place where the wrong occurred) and adopted a more flexible approach which looks to (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Id.* Plaintiffs place heavy emphasis on the fact that the conduct at issue occurred outside of Texas and therefore argue the second element should outweigh the others. Plaintiffs also argue that the court, in deciding this choice of law issue, should take notice of the fact that their claims would be barred by section 82.004.

■ The first step in the analysis is to determine whether a conflict of law actually exists. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex.1984). The plaintiffs have not identified the conflict of law. While only Texas and California have enacted statutes which limit products liability claims against manufacturers of inherently dangerous products, plaintiffs have failed to discuss the effects of applying the law of Kentucky, North Carolina or Virginia. They have not informed the court whether any of those states for example, have adopted the "common knowledge defense" of the RESTATEMENT (SECOND) OF TORTS § 402A cmt. i and j (1965). When there is no evidence or discussion of another state's law, that law is presumed to be the same as Texas law. *See Creavin v. Moloney*, 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied); *Humphrey v. Bullock*, 666 S.W.2d 586, 589 (Tex.App.—Austin 1984, writ ref'd n.r.e.). For the purposes of the conflicts discussion however, the court will presume a conflict exists.

The court must then identify the relevant state contacts. The number of contacts is less important than the qualitative nature of those contacts as affected by the policy factors of section 6 of the Restatement. *See Gutierrez*, 583 S.W.2d at 319. In the present case, plaintiffs are residents of Texas. They saw tobacco advertisements and bought cigarettes in Texas. In their response, plaintiffs concede that the injury which gave rise to this civil action occurred in Texas. Defendant Liggett Group Inc. is incorporated in Delaware with its principal place of business in North Carolina. Defendant Brown & Williamson Tobacco Corp. is incorporated in Delaware with its principal place of business in Kentucky. Defendant Batus Holdings Inc. is incorporated in Delaware with its principal places of business in Kentucky and Britain. Defendant B.A.T. Industries, p.l.c. is organized under the laws of the United Kingdom with its principal place of business in the United Kingdom. Defendant R.J. Reynolds Tobacco Company is incorporated in New Jersey with its principal place of business in North Carolina. Defendant Brooke Group Ltd. is incorporated in Delaware with its principal place of business in Florida. Defendant Philip Morris Companies is incorporated in Virginia with its principal place of business in New York. Defendant Philip Morris Incorporated (formerly Philip Morris USA) is incorporated in Virginia with its principal place of business in New York. Defendant Philip Morris Products Inc. is organized under the laws of Virginia with its principal place of business in Virginia. Defendant Loews Corporation is incorporated in Delaware with its principal place of business in New York. Defendant Lorillard, Inc. is incorporated in Delaware with its principal place of business in Delaware. Defendant Lorillard Tobacco Company is incorporated in Delaware with its principal

(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

place of business in North Carolina. Additionally, Brown & Williamson Tobacco Company and B.A.T. are successors to The American Tobacco Company. Finally, the relationship between the parties arose in Texas, where the injury occurred.

The court analyzes these contacts in light of the factors listed in section 6 of the Restatement. While the court must identify the relevant policies of Texas and the other interested states, the court must also respect the justified expectations of the parties and the needs of the interstate and national system.

### A. The Place Where the Injury Occurred and Relationship of the Parties

The first factor weighs heavily in favor of applying Texas law. Plaintiffs are citizens and residents of Smith County, Texas. They bought and used defendant's products in Texas and concede that Mr. Burleson's injuries occurred in Texas. Unlike other states, the place of injury is but one factor to be considered when determining the applicable law under Texas choice of law rules. *See Denman v. Snapper Div.*, 131 F.3d 546, 550 (5th Cir.1998).[4]

The one case plaintiffs cite, *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F.Supp. 1445 (D.Colo.1988) is a unique case, applicable to the situation of an air crash where the site of injury is viewed as fortuitous rather than an intentional act. Where the site of the injury is fortuitous, the second factor will not support applying that state's law. *See Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir.1992). However, this is not the case with tobacco as defendants marketed and sold their products in Texas.

4. Defendants argue that the Fifth Circuit's decision in *Allison v. ITE Imperial Corp.*, 928 F.2d 137 (5th Cir.1991) forecloses the choice of law issue because it gave a presumption for the application of the law of the state where the accident occurred. This is incorrect. In *Allison*, the court applied Mississippi choice of law rules, not Texas. Texas has only adopted part of the Restatement and has not adopted the presumption in § 146. *See Aguiniga*, 9 S.W.3d at 260. Thus, under Texas

In a products liability action, Texas' strong interest in protecting its citizens from defective products and in regulating the conduct of corporations that have business operations in the state will generally be in favor of applying Texas law. *See Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260–61 (Tex.App.—San Antonio 1999, pet. filed); *Vizcarra v. Roldan*, 925 S.W.2d 89, 91 (Tex.App.—El Paso 1996, no writ). In the present case however, section 82.004 bars plaintiffs' claims. *See Sanchez*, 187 F.3d at 491; *Hughes*, at 6–7. Section 82.004 was enacted by the Texas Legislature as part of a "tort reform" effort; it codifies comments i and j to the RESTATEMENT (SECOND) OF TORTS § 402A. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 427 n. 2 (Tex. 1997). Hence, Texas has an interest in limiting (what its legislature believed to be) frivolous suits and in providing some measure of repose for sellers and manufacturers of products where the danger is commonly known.[5] This policy is implicated in the present case.

In contrast, plaintiffs have not identified any interest that the other states would have in protecting Texas residents from products manufactured in their respective states. If anything those states would have an interest in limiting the liability of the defendants. Plaintiffs ask the court not to apply Texas law because their claims are barred yet the prospect of success is not a factor under choice of law analysis. *See Cf. Vizcarra*, 925 S.W.2d at 92 (holding Mexican law applied to accident which occurred in Mexico in spite of Mexican law limiting tort liability).

law, the place of injury is but one of the factors considered under choice of law analysis. *See Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1139 (N.D.Tex.1980).

5. The Texas products liability statutes are also designed to provide indemnity for the sellers of such products. *See* TEX. CIV. PRAC. & REM. CODE § 82.002.

## B. *The Place where the Conduct causing the Injury occurred.*

Despite the statement contained in the original complaint that "a substantial part of the events and omissions giving rise to the claim occurred in the Eastern District of Texas," plaintiffs now argue that the laws of North Carolina, Kentucky and Virginia should apply because several of the Tobacco manufacturers have their principal place of business in those states. The plaintiffs conclude that the decisions as to marketing and product development were made at the headquarters of those companies. This assertion is however contradicted by the record as well as the plaintiffs' pleadings.

While several of the defendants have either North Carolina, Kentucky or Virginia as their principal places of business, other defendants do not. Batus Holdings Inc. has its principal place of business in Britain as well as Kentucky. B.A.T. Industries' principal place of business is the United Kingdom. Brooke Group Ltd.'s principal place of business is Florida. Philip Morris Incorporated and Loews Corporation have their principal places of business in New York. Lorillard, Inc., has its principal place of business in Delaware. The court is unsure which of these contacts should predominate over the other. The alleged campaign of deceit (ongoing since the early 1950's) took place on a nationwide scale. For example, the 1954 "A Frank Statement to Cigarette Smokers" newspaper advertisement appeared in papers all around the country. It is thus not at all clear that all the decisions which plaintiffs allege resulted in the representations the basis of this suit occurred only in Virginia, North Carolina and Kentucky.

■ The court finds that Texas has the most significant relationship to the occurrence and the parties under the principles stated in section 6 of the Restatement. While the defendants allegedly made the decision to market cigarettes and conceal their harmful effects in other states, the plaintiffs were Texas residents and injured in Texas by the actions of the defendants. Further the relationship between the parties arose in Texas. A product manufacturer distributing his products in Texas to Texas residents would expect Texas law to apply to the sale and product. Finally, it would be an anomaly to apply another state's law in the present situation where plaintiffs' injuries are based on the collective conduct of the defendants. The court finds the application of Texas law is in line with the needs of the interstate and international systems and protects the justified expectations of the parties.

## IV. CONSTITUTIONAL ARGUMENTS.

■ In this court's memorandum opinion in *Hughes,* the court considered and rejected the plaintiffs' argument that section 82.004 violates the Open Courts provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13. Accordingly, the court will consider the remaining argument that section 82.004 violates the Equal Protection clauses of the Texas and United States Constitutions.

Plaintiffs argue section 82.004 impermissibly places the users of products which are known to be dangerous in a different class then users of other products by depriving them of any product liability or negligence action against the manufacturers of these products. If no fundamental rights, nor proceedings along suspect lines are involved, the statute does not offend the equal protection provision if there is any "reasonably conceivable" state of facts that could provide a rational basis for it. *Heller v. Doe,* 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Texas Boll Weevil Eradication Found. v. Lewellen,* 952 S.W.2d 454, 464–65 (Tex.1997). In the memorandum opinion entered in the *Hughes* case, this court addressed this issue and found sections 82.001 and 82.004 to be rationally related to their stated purposes. The court therefore finds that section 82.004 does not offend the Equal Pro-

tection clauses of the United States and Texas Constitutions.

## V. CONCLUSION

The choice of law argument, while novel, is merely an attempt to circumvent the Fifth Circuit's opinion in *Sanchez*. The rest of plaintiffs' arguments are considered in the court's memorandum opinion in *Hughes*. It is therefore the opinion of this court that Defendants' Motion for Judgment on the Pleadings should be GRANTED and this suit is hereby DISMISSED at plaintiffs' cost.